### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN DIXON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SIGNIFY HEALTH, INC., MATTHEW S. HOLT, KYLE B. PETERSON, BRANDON H. HULL, KEVIN M. MCNAMARA, ALBERT A. NOTINI, ARNOLD GOLDBERG, KYLE ARMBRESTER, TAJ J. CLAYTON, VIVIAN E. RIEFBERG, and HEATHER DIXON,<br><br>　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian Dixon ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Signify Health, Inc. ("Signify" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by CVS Pharmacy, Inc. ("CVS").[1]

2. On September 2, 2022, the Company entered into an Agreement and Plan of

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

Merger with CVS and CVS's wholly owned subsidiary, Noah Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement"). The Merger Agreement provides that Signify stockholders will receive $30.50 in cash for each share of Company common stock.

3. The Company's corporate directors subsequently authorized the September 30, 2022 filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

---

[2] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for October 31, 2022.

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of SIGNIFY common stock.

10. Defendant Signify is a Delaware corporation, with its principal executive offices located at 4055 Valley View Lane, Suite 700, Dallas, Texas 75244. Signify's shares trade on the New York Stock Exchange under the ticker symbol "SGFY." Signify is a healthcare platform that uses advanced analytics, technology and nationwide healthcare provider networks to create and power value-based payment programs. Signify's customers include health plans, governments, employers, health systems and physician groups. Signify's episode payment platform managed $4.62 billion of spend under the Medicare Bundled Payment for Care Improvement Advanced program in 2021. The Company's mobile network of providers conducted over 1.9 million in-home health evaluations for individuals participating in Medicare Advantage and other managed care plans in 2021.

11. Defendant Matthew S. Holt is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

3

12. Defendant Kyle B. Peterson is and has been a director of the Company at all times relevant hereto.

13. Defendant Brandon H. Hull is and has been a director of the Company at all times relevant hereto.

14. Defendant Kevin M. McNamara is and has been a director of the Company at all times relevant hereto.

15. Defendant Albert A. Notini is and has been a director of the Company at all times relevant hereto.

16. Defendant Arnold Goldberg is and has been a director of the Company at all times relevant hereto.

17. Defendant Kyle Armbrester is and has been Chief Executive Officer and a director of the Company at all times relevant hereto.

18. Defendant Taj J. Clayton is and has been a director of the Company at all times relevant hereto.

19. Defendant Vivian E. Riefberg is and has been a director of the Company at all times relevant hereto.

20. Defendant Heather Dixon is and has been a director of the Company at all times relevant hereto.

21. Defendant Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22. On September 5, 2022, CVS and Signify jointly announced in relevant part:

WOONSOCKET, R.I., DALLAS and NEW YORK, Sept. 5, 2022 — CVS Health® (NYSE:CVS) and Signify Health (NYSE: SGFY) ("Signify") have entered into a definitive agreement under which CVS Health will acquire Signify Health for $30.50 per share in cash, representing a total transaction value of approximately $8 billion.

Signify Health is a leader in Health Risk Assessments, value-based care and provider enablement. With a network of more than 10,000 clinicians across all 50 states and a nationwide value-based provider network, combined with its proprietary analytics and technology platforms, Signify Health is improving patient engagement, patient outcomes and care coordination for stakeholders across the health care system. Signify Health's clinicians and providers can have an even greater impact by engaging with CVS Health's unique collection of assets and connecting patients to care how and when they need it.

"Signify Health will play a critical role in advancing our health care services strategy and gives us a platform to accelerate our growth in value-based care," said CVS Health President and CEO, Karen S. Lynch. "This acquisition will enhance our connection to consumers in the home and enables providers to better address patient needs as we execute our vision to redefine the health care experience. In addition, this combination will strengthen our ability to expand and develop new product offerings in a multi-payor approach."

Signify Health's network of clinicians – physicians, nurse practitioners and physician assistants – utilize home-based visits to identify a patient's clinical and social needs, and then connect them to appropriate follow-up care and community-based resources in order for the patient to have a more connected, effective care experience. In 2022, Signify Health's clinicians expect to connect with nearly 2.5 million unique members in the home, both in-person and virtually, and on average they spend 2.5 times longer with a patient in the home than providers spend in the average primary care office visit.

Notably, since acquiring Caravan Health in March 2022, Signify Health has further expanded its focus on value-based care and population health. Today, Caravan is already a partner to over 170 providers participating in accountable care organizations (ACOs) serving Medicare beneficiaries with a focus on improving the health of underserved communities. Signify Health recently announced that its ACOs generated more than $138 million in gross savings in 2021, and in 2023 the Caravan business is expected to serve ACOs representing over 700,000 people – rivaling many standalone platforms. As part of CVS Health, Signify Health will continue to advance its extensive primary care enablement capabilities, including turnkey analytics, network, and practice improvement solutions, to help providers transition to value-based reimbursement and improve quality of care.

5

"Signify Health's mission is to build trusted relationships to make people healthier by using actionable intelligence to understand what's really impacting outcomes and cost today," said Kyle Armbrester, CEO of Signify Health. "As we carefully considered our long-term strategic options, we determined that CVS Health is the ideal partner, given its focus on expanding access to health services and helping consumers navigate to the best sites of care. We are both building an integrated experience that supports a more proactive, preventive and holistic approach to patient care, and I look forward to executing on our shared vision for the future of care delivery."

"We formed Signify Health and recruited Kyle and the team to build a strategic innovation platform focused on leveraging technology as a catalyst for connecting key health care stakeholders to drive better patient outcomes," said Matt Holt, Chairman of the Board, Signify Health and President of Private Equity and Managing Director at New Mountain Capital, which owns a majority stake in Signify Health. "Together with CVS Health, Signify is uniquely positioned to continue to lead the transformation to value-based care. We look forward to the significant impact this transaction will make on health care for years to come."

Following the close of the transaction, Kyle Armbrester will continue to lead Signify Health as part of CVS Health. Signify Health's extensive network of over 50 health plan clients and their members will further augment CVS Health's longstanding and leading offering of payor-agnostic solutions for a diverse set of health plan and employer clients.

**Transaction details**

CVS Health will acquire Signify Health's stock for $30.50 per share. CVS Health expects to fund the transaction with existing cash from its balance sheet and available resources and is committed to maintaining its current credit ratings. The transaction was approved by the Board of Directors at each of the respective companies. It is subject to approval by a majority of Signify Health's stockholders, receipt of regulatory approval and satisfaction of other customary closing conditions. Private equity funds affiliated with New Mountain Capital, which owns approximately 60% of the common stock of Signify Health, have agreed to vote the shares they own in favor of the transaction, subject to customary exceptions. CVS Health and Signify Health anticipate that the transaction will close in the first half of 2023.

"This is a major step as we continue to execute on our strategy," said CVS Health Executive Vice President and Chief Financial Officer Shawn Guertin. "We expect the acquisition to be meaningfully accretive to earnings and, as a result, are increasingly confident we can achieve our long-term adjusted EPS goals as outlined at our Investor Day in December 2021."

**The Materially Incomplete and Misleading Proxy Statement**

23. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on September 30, 2022. The Proxy Statement, which recommends that Signify stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning the financial forecasts for the Company, as well as the financial analyses underlying the fairness opinions provided by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Deutsche Bank Securities Inc. ("Deutsche Bank").[3]

*Material Misrepresentations and/or Omissions Concerning Financial Forecasts for Signify and the Financial Advisors' Respective Financial Analyses*

24. The Proxy Statement fails to disclose material information concerning the financial forecasts for Signify, including the line items underlying the calculation of Adjusted Gross Profit, Adjusted EBITDA, and Unlevered Free Cash Flow.

25. The Proxy Statement also fails to disclose material information concerning the Financial Advisors' respective financial analyses.

26. With respect to the *Illustrative Discounted Cash Flow Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose: (a) Signify's terminal year NTM Adjusted EBITDA used to calculate the terminal values for the Company; (b) the terminal values for the Company; (c) Signify's total debt- and debt-like items; (d) Signify's unrestricted cash and cash equivalents as of June 30, 2022; (e) the present value of the benefit of tax assets

---

[3] Goldman Sachs and Deutsche Bank collectively will be referred to as the "Financial Advisors."

covered by the tax receivable agreement among Signify, Cure TopCo, LLC and certain other parties thereto ("TRA") net of the liabilities owed under the TRA; and (f) the Company's fully diluted outstanding shares.

27. With respect to the *Illustrative Present Value of Future Share Price Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose: (a) the present value of the benefit of tax assets covered by the TRA net of the liabilities owed under the TRA as of December 31, 2022, 2023 and 2024; and (b) the Company's fully diluted outstanding shares as of December 31, 2022, 2023 and 2024.

28. With respect to the *Premia Paid Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose the specific transactions analyzed and the individual premia for each.

29. With respect to the *Discounted Cash Flow Analysis* performed by Deutsche Bank, the Proxy Statement fails to disclose the projection metric to which Deutsche Bank applied perpetuity growth rates and quantification thereof and the Company's terminal values.

30. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Goldman Sachs & Co. LLC," and "Opinion of Deutsche Bank Securities Inc." sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Signify**

31. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

32. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Signify is liable as the issuer of these statements.

33. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

34. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

35. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

36. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

37. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

38. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Signify within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Signify and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations

as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

43. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

11

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 11, 2022                           **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*